Matter of Jonathan JJ. (Alan JJ.--Caren KK.) (2022 NY Slip Op 02837)

Matter of Jonathan JJ. (Alan JJ.--Caren KK.)

2022 NY Slip Op 02837

Decided on April 28, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 28, 2022

529583
[*1]In the Matter of Jonathan JJ., a Person who is Intellectually/and or Developmentally Disabled. Alan JJ., Appellant; Caren KK., Respondent. (Proceeding No. 1.)
In the Matter of Jonathan JJ., a Person who is Intellectually/and or Developmentally Disabled. Caren KK., Petitioner; Alan JJ., Appellant. (Proceeding No. 2.)

Calendar Date:March 24, 2022

Before:Egan Jr., J.P., Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ.

Douglas Walter Drazen, Binghamton, for appellant.
Sheila Shea, Mental Hygiene Legal Service, Albany (Shannon Stockwell of counsel), for Jonathan JJ.

Fisher, J.
Appeal from an order of the Surrogate's Court of Broome County (Guy, S.), entered June 17, 2019, which, in two proceedings pursuant to SCPA article 17-A, among other things, appointed Charles KK. as a limited coguardian of Jonathan JJ.
In 2011, the Commissioner of Social Services of Broome County and Shulamit LL. were appointed coguardians of the person of Jonathan JJ. (born in 1987). In 2018, Shulamit LL. sought to withdraw as Jonathan JJ.'s coguardian, as her marriage to Alan JJ. (hereinafter the father) began to dissolve. Thereafter, the father commenced proceeding No. 1 to be appointed coguardian of the person and property of Jonathan JJ. with the Commissioner, asserting that Jonathan JJ. has resided with him since 2009 and has thrived while in his care. He further noted that Jonathan JJ. has spent 30 minutes every three weeks with his mother, Caren KK. (hereinafter the mother), under the supervision of two aides. The mother then commenced proceeding No. 2 seeking to be appointed the sole guardian of Jonathan JJ.'s person, with the Commissioner as the guardian of his property. Alternatively, she sought to be coguardian with the Commissioner over the property of Jonathan JJ. or that her friend be appointed his guardian.
A four-day hearing was held over a four-month period, during which the mother withdrew her friend's name from consideration as guardian and proposed that her husband, Charles KK. (hereinafter the stepfather), be appointed guardian. At the close of the hearing, Surrogate's Court granted the father's petition for coguardianship of the person and property of Jonathan JJ. along with the Commissioner. The court also appointed the stepfather as a limited coguardian with the ability to attend only the medical appointments of Jonathan JJ. The father appeals, arguing that Surrogate's Court erred in appointing the stepfather as a limited coguardian.[FN1]
In order to modify an existing guardianship order, it must be shown that such change would further the best interests of the person who is intellectually or developmentally disabled (see Matter of Kevin Z. [Carmella AA.—Edward Z.], 105 AD3d 1269, 1270-1271 [2013], lv dismissed 21 NY3d 1033 [2013]; see also SCPA 1750, 1750-a, 1755; Matter of Garett YY., 258 AD2d 702, 702 [1999]). Such a modification is warranted where it is necessary to protect the "'personal and/or financial interests'" of the person with a disability (Matter of Garett YY., 258 AD2d at 702, quoting SCPA 1755), or "as may be deemed necessary or proper for the welfare" of such person (SCPA 1758; see Matter of Kevin Z. [Carmella AA.—Edward Z.], 105 AD3d at 1272). Where properly supported by evidence, a court may impose "reporting and/or monitoring requirements if and when it sees fit" (Matter of Kevin Z. [Carmella AA.—Edward Z.], 105 AD3d at 1272; see generally SCPA 1758).
Although Surrogate's Court is entitled to "great deference" (Matter of Garett YY., 258 AD2d at 703), we agree with the father that the appointment [*2]of the stepfather as a limited coguardian is not within Jonathan JJ.'s best interests. The testimony elicited at the hearing demonstrated that Jonathan JJ. has thrived from consistency in his routine and regimen. In that regard, his outbursts were a primary concern among his treatment providers, and the routine that was put in place, together with management by medical personnel, helped control the outbursts, as well as contributed to other positive physical, medical and cognitive improvements in his life. His treating physician opined that this consistency and routine were "very important" for his continued growth and success. Despite this, the mother testified that "medication manipulation" by the father contributed to destabilizing Jonathan JJ., which she believes is still ongoing and is advanced by the "hypocrisy" of the Broome County Department of Social Services. Although the stepfather was careful to stop short of adopting the mother's positions at the hearing, his testimony revealed that he has not seen Jonathan JJ. since 2009, and he has only spoken to him on the telephone three or four times since then. Even though the stepfather testified that he was "fairly familiar" with Jonathan JJ.'s diagnoses, he later conceded that he did not know enough about Jonathan JJ.'s current regimen to make any recommendations regarding his medical and social needs or other aspects of his life. Further, although the stepfather claimed that he could work with the coguardians and treatment team, he admitted to previously suing the father for one million dollars in a matter that was dismissed. Although a court may impose a monitoring requirement on a guardianship, we cannot find any meaningful evidence from which it can be concluded that the reintroduction of the stepfather into Jonathan JJ.'s life as a limited coguardian is in his best interests (see Matter of Kevin Z. [Carmella AA.—Edward Z.], 105 AD3d at 1272; Matter of Garett YY., 258 AD2d at 702; Matter of La Cross, 124 AD2d 870, 871 [1986]; see generally SCPA 1755, 1758).
Egan Jr., J.P., Aarons, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as appointed Charles KK. a limited coguardian of Jonathan JJ. and required the Broome County Department of Social Services to notify Charles KK. of Jonathan JJ.'s medical appointments, and, as so modified, affirmed.

Footnotes

Footnote 1: The mother also filed a notice of appeal, but this Court dismissed her appeal upon default (see Matter of Jonathan JJ. [Allan JJ.—Caren KK.], 2021 NY Slip Op 64507[U] [2021]). We note that Mental Hygiene Legal Service, Jonathan JJ.'s counsel, supports the appointment of the father as the coguardian of Jonathan JJ. and opposes the limited coguardianship of the stepfather.